FILED
2016 Feb-16  AM 11:39
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
JASPER DIVISION**

| | | |
|---|---|---|
| **VICKIE MICHELE HAMILTON,** | ) | |
| | ) | |
| **Claimant,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO.** |
| | ) | **6:14-CV-01556-KOB** |
| **CAROLYN W. COLVIN,** | ) | |
| **ACTING COMMISSIONER OF** | ) | |
| **SOCIAL SECURITY,** | ) | |
| | ) | |
| **Respondent.** | ) | |

**MEMORANDUM OPINION**

**I. INTRODUCTION**

On January 22, 2009, the claimant, Vickie Hamilton, protectively applied for disability

insurance benefits and Supplemental Security Income alleging that she became disabled on

January 9, 2009 because of arthritis in both knees, spurs in her neck, and back problems. (R. 202-

11, 228). The claimant's claims were denied initially. (R. 90, 91, 97-103). The Administrative

Law Judge (ALJ) held a hearing on October 21, 2010. (R. 63-83). Thereafter, the ALJ found the

claimant not disabled in a decision dated February 2, 2011. (R. 447-57). The claimant requested

review of the hearing decision, and the Appeals Council remanded the case to an ALJ on July 6,

2012. (R. 92-95, 150).

The ALJ held a new hearing on December 3, 2012. (R. 28-45). The ALJ then issued a

decision dated April 8, 2013, finding the claimant not disabled. (R. 10-23). The claimant

requested review of the decision, and the Appeals Council denied the claimant's request for

review. (R. 1-6, 8-9). Consequently, the ALJ's April 2013 decision became the final decision of

1

the Commissioner of the Social Security Administration. (R. 1-6). The claimant has exhausted

her administrative remedies, and this court has jurisdiction pursuant to 42 U.S.C. §§ 405(g) and

1383(c)(3). For the reasons stated below, this court AFFIRMS the decision of the Commissioner.

## II. ISSUES PRESENTED

The claimant presents the following issues for review:

1.     whether the ALJ properly applied the pain standard to the claimant's subjective complaints;

2.     whether the ALJ's step two determination was sufficient when the ALJ did not find the claimant's cervical degenerative disc disease to be a severe impairment; and

3.     whether the ALJ properly assessed the claimant's residual functional capacity ("RFC"), including the "function-by-function" assessment.

## III. STANDARD OF REVIEW

The standard for reviewing the Commissioner's decision is limited. This court must

affirm the Commissioner's decision if she applied the correct legal standards and if substantial

evidence supports her factual conclusions. *See* 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d

1420, 1422 (11th Cir. 1997); *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

"No . . . presumption of validity attaches to the [Commissioner's] legal conclusions,

including determination of the proper standards to be applied in evaluating claims.*" Walker*, 826

F.2d at 999. This court does not review the Commissioner's factual determinations *de novo*. The

court will affirm those factual determinations that are supported by substantial evidence.

"Substantial evidence" is "more than a mere scintilla. It means such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402

U.S. 389, 402 (1971).

The court must keep in mind that opinions such as whether a claimant is disabled, the

nature and extent of a claimant's residual functional capacity, and the application of vocational factors "are not medical opinions, . . . but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability." 20 C.F.R. §§ 404.1527(d), 416.927(d). Whether the claimant meets the listing and is qualified for Social Security disability benefits is a question reserved for the ALJ, and the court "may not decide facts anew, reweigh the evidence, or substitute [its] judgment for that of the Commissioner." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). Thus, even if the court were to disagree with the ALJ about the significance of certain facts, the court has no power to reverse that finding as long as substantial evidence in the record supports it.

The court must "scrutinize the record in its entirety to determine the reasonableness of the [Commissioner]'s factual findings." *Walker*, 826 F.2d at 999. A reviewing court must not only look to those parts of the record that support the decision of the ALJ, but also must view the record in its entirety and take account of evidence that detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179, 1180 (11th Cir. 1986).

### IV. LEGAL STANDARD

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A). To make this determination the Commissioner employs a five-step, sequential evaluation process:

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986)[1]; 20 C.F.R. §§ 404.1520, 416.920.

In evaluating pain and other subjective complaints, the Commissioner must consider whether the claimant demonstrated an underlying medical condition, and *either* (1) objective medical evidence that confirms the severity of the alleged pain arising from that condition *or* (2) that the objectively determined medical condition is of such a severity that it can reasonably be expected to give rise to the alleged pain. *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). The ALJ may consider the claimant's daily activities in evaluating and discrediting complaints of disabling pain. *Harwell v. Heckler*, 735 F.2d 1292, 1293 (11th Cir. 1984).

If the ALJ decides to discredit the claimant's testimony as to her pain, he must articulate explicit and adequate reasons for that decision; failure to articulate reasons for discrediting the claimant's testimony requires that the court accept the claimant's testimony as true. *Foote v. Chater*, 67 F.3d 1553, 1561-62 (11th Cir. 1995). A reviewing court will not disturb a clearly articulated credibility finding supported by substantial evidence in the record. *Id.* at 1562.

---

[1]*McDaniel v. Bowen*, 800 F.2d 1026 (11th Cir. 1986) was a supplemental security income case (SSI). The same sequence applies to disability insurance benefits. Cases arising under Title II are appropriately cited as authority in Title XVI cases. *See, e.g.*, *Ware v. Schweiker*, 651 F.2d 408 (5th Cir. 1981) (Unit A).

Under step two of the sequential process, the ALJ must determine whether a claimant has a "severe" impairment or combination of impairments that causes more than a minimal limitation on a claimant's ability to function. *Davis v. Shalala*, 985 F.2d 528, 532 (11th Cir. 1993). When a claimant has alleged several impairments, the ALJ has a duty to consider the impairments in combination and to determine whether the combined impairments render the claimant disabled. *Jones v. Dep't of Health & Human Servs.*, 941 F.2d 1529, 1533 (11th Cir. 1991). The claimant bears the burden at the second step of the sequential evaluation of proving that she has a severe impairment or combination of impairments. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999). Under Eleventh Circuit analysis "an impairment or combination of impairments is not severe if it does not significantly limit [the claimant's] physical or mental ability to do basic work activities." *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997).

In addition, the Eleventh Circuit has stated that "'the ALJ could not have committed any error at step two because he found that [the claimant] had a severe impairment or combination of impairments and moved on to the next step in the evaluation, which is all that is required at step two.'" *Farrington v. Astrue,* No. 2:09-CV-94-J-TEM, 2010 WL 1252684, *4 (M.D. Fla. March 29, 210) (quoting *Council v. Barnhart*, No. 04-13128, 127 F. App'x 473 (Table), at *4 (11th Cir. Dec. 28, 2004)); *see Perry v. Astrue*, 280 F. App'x 887, 894 (11th Cir. 2008) (ALJ's failure to not specifically identify severe impairments at step two "did not deprive [the appellate court] of the ability to evaluate the ALJ's legal reasoning based on the record"); *see also Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987) (noting that a failure to find a particular impairment severe was not reversible error because the ALJ found other severe impairments).

The ALJ must complete an RFC assessment of each claimant. Social Security Ruling 96–8p regarding RFC assessment provides:

> The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b), (c), and (d) of 20 CFR 404.1545 and 416.945. Only after that may RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy.

SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996). The ALJ must first assess the claimant's functional limitations and restrictions and then express his functional limitations in terms of exertional levels. *See Castel v. Comm'r of Soc. Sec.,* 355 F. App'x 260, 263 (11th Cir.2009); *Freeman v. Barnhart,* 220 F. App'x 957, 959–60 (11th Cir.2007); *see also Bailey v. Astrue,* 5:11–CV–3583–LSC, 2013 WL 531075 (N.D. Ala. Feb. 11, 2013).

The ALJ must consider all of the relevant evidence in assessing the claimant's functional limitations, including

> medical history, medical signs and laboratory findings, the effects of treatment, including limitations or restrictions imposed by the mechanics of treatment (e.g., frequency of treatment, duration, disruption to routine, side effects of medication), reports of daily activities, lay evidence, recorded observations, medical source statements, effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment, evidence from attempts to work, need for a structured living environment, and work evaluations, if available.

SSR 96–8p at *4–*5.

## V. FACTS

The claimant was forty-four years old with two years of college when the ALJ rendered her decision. (R. 23, 202, 233). The claimant reported that she was disabled because of arthritis

in both knees, spurs in the neck, and back problems. (R. 228). The claimant had past relevant

work as a certified nurse's assistant, receptionist, laborer, and salesperson. (R. 229). The claimant

alleged she was disabled beginning January 19, 2009. (R. 202, 205, 228).

*Physical Impairments*

The claimant sought medical treatment at Jasper Family Practice Center from March 1,

2005 to April 30, 2010. On March 30, 2006, the claimant began to complain of pain in her right

knee caused by a baker's cyst. (R. 306).

On August 24, 2007, she complained of upper and lower back pain to CRNP Dee Kizziah

at the Jasper Family Practice Center. The claimant also reported to Ms. Kizziah that her knee

pain was worse after standing for prolonged periods and after lying down. X-rays revealed

significant osteoarthritis, as well as bone spurs. Ms. Kizziah described the claimant as morbidly

obese and encouraged the claimant to lose weight to protect from further degeneration. Ms.

Kizziah also prescribed the claimant Ultram for pain; Naprosyn and Prevacid to protect her

gastric lining; Lortab to take sparingly; Topamax for migraine headaches; and Avapro for

hypertension. (R. 316-17).

During a visit to Dr. Derrick Bowling on November 14, 2007 at the Jasper Family

Practice Center, the claimant reported being upset about being denied disability and requested a

letter stating that she is unable to work. Dr. Bowling agreed and wrote a letter stating that she

was unable to work until she was cleared by orthopedics. (R. 322-23).

On February 11, 2008, at the SSA's request, the claimant presented for a medical

disability determination examination with Dr. Alexandra Leigh. The claimant told Dr. Leigh that

her knee pain normally rates a three out of ten on a ten-point scale, but can go as high as eight out

of ten. She also complained of neck pain that is normally two out of ten, but can sometimes rate as much as six out of ten. At the time, the claimant's activities of daily living included assisting a friend who had recently had surgery, cooking, and doing light housework. (R. 368-73).

Dr. Leigh also noted that the claimant had a slightly antalgic walk; favored her left side; could not toe walk; could walk; could squat and bend over; had normal range of motion except for some decrease in her cervical and dorsolumbar spine; had some pain in her knees with crepitus. She also had some tenderness to palpation along C3 and C6. (*Id.*).

Dr. Leigh diagnosed the claimant with likely osteoarthritis in bilateral knees and likely early degenerative disease in her neck. Dr. Leigh opined that the claimant could stand or walk for four hours in an eight-hour day with breaks every hour; could sit for eight hours with breaks every one to two hours; could frequently lift and carry ten pounds; could occasionally lift and carry twenty pounds; should not bend, climb, kneel, balance, or crawl; and should only minimally stoop, crouch, and pull. (*Id.*).

During her visit to Ms. Kizziah at the Jasper Family Practice Center on March 18, 2008, the claimant reported that she underwent surgery approximately two weeks prior for a severely dislocated knee cap, as well as arthritis under her knees. The claimant also reported to Ms. Kizziah at a later visit on April 17, 2008, that the doctor performed surgery on her right knee first and planned to perform surgery on the left knee when the right knee healed. By May 16, 2008, her knee pain was much improved, and the claimant told Dr. Kizziah that she  planned to have her left knee surgery soon. (R. 328-32).

On June 16, 2008, the claimant continued to complain of neck pain, but when Ms. Kizziah referred her to Dr. Carter Harsh for an evaluation, she never went. (R. 334-35).

8

On August 8, 2008, the claimant continued to complain of neck pain, although Ms. Kizziah assessed that she had good range of motion. The claimant admitted to Ms. Kizziah that she had been under a great deal of stress, and Ms. Kizziah suggested that her pain was most likely stress related. On November 24, 2008, the claimant continued to complain of knee pain, so Ms. Kizziah told her to take Lortab four times per day. (R. 338-39, 348-49).

On December 19, 2008, Ms. Kizziah again counseled the claimant regarding weight loss. The claimant explained that she planned on returning to work in January 2009, and that she hoped her weight loss would improve at that time. (R. 350-51).

On January 15, 2009, the claimant reported to Ms. Kizziah that she was doing well, but that the cold weather caused some more pain, as expected. During another visit to Ms. Kizziah on February 19, 2009, the claimant complained of weight gain, but she admitted that she had been overeating and that she was going to start exercising. (R. 352-55).

On April 15, 2009, the claimant visited Dr. Muhammad Ali at Walker Rural Health Services, complaining of neck pain, paraesthesia, numbness, lower back pain, and headaches. The claimant rated her neck pain an eight out of ten and her back pain a six out of ten. Dr. Ali ran a few tests and ordered an MRI of the claimant's neck and LS area. (R. 423-25).

On June 18, 2009, the claimant reported to Ms. Mizziah at Jasper Family Practice Center that she was doing well under pain management with Dr. Ali. (R. 378-79).

Thereafter on June 26, 2009, Dr. Ali diagnosed the claimant with bilateral sensory neuropathy, which caused paraesthesia, numbness, degeneration of lumbar or lumbosacral intervertebral disc, cervicobrachial syndrome, and headaches. (R. 420-22).

The claimant returned to Ms. Kizziah on November 25, 2009, complaining again about

9

severe back pain; but the claimant felt like the weight of her breasts caused a great majority of her pain. She was interested in a breast reduction, but Ms. Mizziah explained that she would have to lose weight first. The claimant said that she was willing to go through a program and to do what she had to do to get her weight off and to make her back feel better. At that time, the claimant had almost constant neck pain and muscle tightness between her shoulder blades and down to her lower back related to her breasts. (R. 376-77).

A few month later on February 9, 2010, Ms. Kizziah noted that the claimant gained twelve pounds; admitted to stress eating; and weighed 319 pounds. On April 30, 2010, the claimant reported to Ms. Kizziah that, overall, she was doing very well; that her current pain medications were working well; and that her blood pressure was stable. She reported taking care of her grandson, which she claimed had a relaxing effect on her. (R. 393-99). The claimant sought no medical treatment after this visit.

On November 4, 2010, the claimant presented for a psychiatric evaluation with Dr. Omar Mohabbat at West Alabama Psychiatric Associates at the SSA's request. The claimant reported poor relationships with her parents and with the father of her two children. She admitted that her daughter was in jail for selling drugs, which had taken a toll on the claimant. The claimant reported that she does not do anything socially; that she has low energy; and that she cries a lot. The claimant reported that pain and not being able to do things on a regular basis because of the pain have been enormous stressors. (R. 402-08).

Dr. Mohabbat noted that the claimant could recall names after a delay; name five major cities; do serial 3s and 7s; and name five presidents in a row backwards. Dr. Mohabbat diagnosed the claimant with major depression, which is chronic and recurrent, and with a pain disorder. He

10

also completed a medical source statement in which he noted mild problems, except for a moderate rating in carrying out complex instructions, interacting appropriately with supervisors, and responding appropriately to usual work situations and to changes in a routine work setting. (*Id.*).

A few years later, on January 22, 2013, the claimant presented for a consultative examination with Dr. Bruce Romeo at Alabama Center for Occupational Medicine & Prevention at the SSA's request. The claimant reported that she has pain in her head, neck, back, and legs, as well as a lot of swelling in her legs. The claimant reported that she was independent with her activities of daily living. She stated that she last worked in 2009 as a sitter but lost her job because the patient died. At the time of the consultation, the claimant weighed 313 pounds. (R. 429-41).

Upon examination, Dr. Romeo noted that the claimant's joint revealed no deformity or tenderness; her gait was normal; she could stoop, kneel, crouch, tandem walk, and walk on her heels and toes; she had negative straight leg raises; and she had five out of five grip strength. Dr. Romeo diagnosed the claimant with bilateral knee pain, neck pain with underlying mild cervical vertebral spondylosis, and morbid obesity. Overall, Dr. Romeo found that the claimant had normal range of motion except for some small limitation in her knees. (*Id.*)

Dr. Romeo completed a medical source statement indicating that the claimant could occasionally lift up to fifty pounds; could continuously lift up to ten pounds; could sit, stand, or walk for a total of eight hours each in an eight-hour workday; had no limitation with use of hands or feet; and had no postural or environmental limitations. (*Id.*).

11

*The ALJ Hearing*

After the Commissioner denied the claimant's request for disability insurance benefits and supplemental security income, the claimant requested and received a hearing before an ALJ on December 3, 2012. At the hearing, the claimant testified that she has not worked anywhere since January 19, 2009. When questioned why she could no longer work a full time job, the claimant testified that she suffers from severe headaches, hypertension, and arthritis. (R. 30, 32-33).

The claimant further testified that she experiences constant pain in her neck, back, and knees. The claimant stated that standing makes her pain worse, and that she takes Tylenol and Excedrin for her pain. On a scale from one to ten with ten being the worst pain, the claimant testified that her pain was a seven. (R. 33-34).

The claimant then testified that she props her legs as high as they can go for fifteen minutes at one time for a total of six hours during the day. In addition, the claimant testified that she can stand for three minutes or less before she has to sit down because of the pain in her back and legs; she can walk for twelve feet before she experiences fatigue because of shortness of breath and pain in her knees; she can lift about five pounds; she experiences difficulties using her hands because of pain and swelling; and she has difficulties grasping, lifting, and opening jars. (R. 34-36).

The claimant testified that she has migraine headaches on and off for about two weeks out of a month. The claimant also testified that her headaches can last anywhere from a couple of days to a week. The claimant further testified that, during a headache, she sits down, turns off the lights, and "tries to be in a flat place." The claimant stated that she suffers from depression with

symptoms including crying spells daily; loss of energy; nightmares; and difficulties

concentrating, sleeping, completing a task, and being around other people. (R. 37- 38).

Furthermore, the claimant testified that she needs assistance from her daughter to bathe,

open jars, and complete household chores; that her daughter stays with her all day every day

except for an hour during the day; that she uses a microwave by herself; and that she has no

medical insurance. (R. 36-37, 39).

A vocational expert, Dr. David W. Head, testified concerning the type and availability of

jobs that the claimant could perform. Dr. Head stated that Ms. Hamilton's past work consisted of

a certified nurse assistant (medium, semiskilled, SVP4); front desk clerk (light, semiskilled,

SVP4); and retail sales clerk (light, semiskilled, SVP3). (R.39-41).

During the administrative hearing, the ALJ proposed a hypothetical scenario to Dr. Head

that supposed an individual with the following limitations: has sedentary level of exertion; must

be in a temperature controlled environment without exposure to hazards; can understand,

remember, and carry out simple instructions; must have non-confrontational supervision; and

must have infrequent and gradually introduced changes in the workplace. Dr. Head testified that

the hypothetical individual would be able to perform the jobs of surveillance system monitor

(sedentary, unskilled, SVP2), with 1,300 jobs in Alabama and 16,000 nationally; bench and table

worker (sedentary, unskilled, SVP2), with 1,750 jobs in Alabama and 85,000 nationally; and

telephone order salesperson (sedentary, unskilled, SVP2), with 1,100 jobs in Alabama and

65,000 nationally. (R. 39-42).

The ALJ proposed another hypothetical scenario to Dr. Head that supposed an individual

with the following limitations: can stand and/or walk for four hours in an eight-hour day with

13

breaks every hour; can sit for eight hours in an eight-hour day with breaks every one to two

hours; can lift and/or carry frequently ten pounds, and occasionally twenty pounds; cannot bend,

climb, kneel, balance, or crawl; requires minimal stooping, crouching; pulling should be within

her abilities; must have no visual, communicative, temperature, noise, heights, or driving. Dr.

Head testified that such an individual could perform the above jobs as long as the individual did

not require more than three other breaks a day for more than five to ten minutes. (R. 42-43, 373).

The ALJ proposed to Dr. Head the following mild limitations: understand and remember

simple instructions; carry out simple instructions; make judgments on simple work-related

decisions; understand and remember complex instructions; make judgments on complex work-

related decisions; interact appropriately with the public; and interact appropriately with co-

workers. The ALJ also proposed the following moderate limitations: carry out complex

instructions; interact appropriately with supervisor(s); and respond appropriately to usual work

situations and to changes in a routine work setting. When asked whether these additional mild

and moderate limitations would prevent the above hypothetical individual from performing the

above jobs, Dr. Head testified that such an individual could perform the above jobs. (R. 43).

Lastly, when questioned whether a hypothetical individual who "needs to elevate their

legs and feet for most of the day, throughout the day, for a total of about six hours" would be able

to perform any job, Dr. Head testified that such a hypothetical individual would be unable to

perform any job. (R. 44).

*The ALJ Decision*

On April 8, 2013, the ALJ issued a decision finding that the claimant was not disabled

under the Social Security Act. First, the ALJ found that the claimant met the insured status

14

requirements of the Social Security Act through December 31, 2012 and had not engaged in

substantial gainful activity since the alleged onset date of January 19, 2009. (R. 10, 15).

Next, the ALJ found that the claimant had the severe impairments of osteoarthritis,

lumbar degenerative disc disease, morbid obesity, bilateral sensory neuropathy, major depression,

and pain disorder. However, the ALJ did not find the claimant's cervical degenerative disc

disease a severe impairment. (R. 15).

The ALJ next found that the claimant did not have an impairment or combination of

impairments that met or medically equaled the severity of one of the listed impairments in 20

C.F.R. Part 404, Subpart P, Appendix 1. (R. 16-17).

The ALJ found that the evidence only supported a finding that the claimant had mild

restrictions in activities of daily living; moderate difficulties in social functioning; moderate

limitations in concentration, persistence or pace; and no episodes of decompensation that had

been of extended duration. Therefore, the ALJ concluded that the claimant's mental impairment

did not cause at least two "marked" limitations or one "marked" limitation and "repeated"

episodes of decompensation, each of extended duration. The ALJ determined that based on the

claimant's medical history, her mental impairment did not satisfy the "paragraph B" criteria.

(*Id.*).

The ALJ also found that the evidence failed to establish the presence of the "paragraph

C" criteria, because the claimant did not have a medically documented history of a chronic

affective disorder of at least two years' duration that had caused more than minimal limitation of

ability to do basic work activities. (R. 17).

Next, the ALJ determined that the claimant had the residual functional capacity to

perform sedentary work as defined in 20 C.F.R. 404.1567(a) and 416.967(a), with the following limitations: must have a temperature controlled environment without exposure to hazards; can understand, remember, and carry out simple instructions; must have non-confrontational supervision; and limited to infrequent and gradually introduced changes in the workplace. (*Id.*).

In making this finding, the ALJ considered the claimant's symptoms and the extent to which these symptoms were reasonably consistent with the objective medical evidence and other evidence. The ALJ found that the claimant could work at a reduced range of the sedentary exertional level. (*Id.*).

The ALJ also evaluated the claimant's obesity and accompanying impairments in accordance with Social Security Ruling 02-1p, which provides that the ALJ must assess the effect that obesity has on the claimant's ability to perform routine movement and necessary physical activity within the work environment. The ALJ found no evidence that the claimant's obesity prevented her from performing work at the sedentary level of exertion. (R. 20).

The ALJ found that Dr. Mohabbat's opinions and limitations regarding supervision and changes in the workplace were reasonable in light of the claimant's allegations and examination, and gave them great weight. (R. 20-21).

The ALJ gave no weight to Dr. Romeo's opinions, considering that Dr. Romeo ignored the impact that the claimant's obesity and subjective complaints would have on the claimant's ability to work. The ALJ gave some weight to the medical source statement completed by Dr. Leigh, because the ALJ found that the opinion was created well before the claimant's alleged onset date of disability and well before the claimant's knee surgeries, which according to the claimant, alleviated some of her pain. (R. 21).

16

Finally, the ALJ found that the claimant was unable to perform any past relevant work. Considering the claimant's age, education, work experience, and residual functional capacity, the ALJ found that jobs existed in significant numbers in the national economy that the claimant could perform, such as surveillance system monitor, bench and table worker, and telephone order sales. Therefore, the ALJ concluded that the claimant was not disabled as defined in the Social Security Act. (R. 22-23).

## VI. DISCUSSION

The claimant argues that the ALJ failed to properly apply the pain standards, that the ALJ failed to follow the "slight abnormality" standard in finding that the claimant's cervical degenerative disc disease is non-severe, and that the ALJ's RFC findings failed to comply with SSR 96-8p in that she failed to include the required "function-by-function" assessment. To the contrary, this court finds that the ALJ applied the appropriate legal standards to her evaluation of the claimant's subjective complaints and the opinions of her physicians, and that substantial evidence supports the ALJ's decision.

### Issue 1: The ALJ's Application of the Pain Standard

The claimant argues that the ALJ did not properly apply the Eleventh Circuit pain standard. More precisely, the claimant argues that her underlying medical conditions could reasonably be expected to give rise to the claimed pain and that she, therefore, meets the second prong of the pain standard. This court finds that the ALJ properly applied the pain standard and that substantial evidence supports her decision.

An ALJ evaluating pain and other subjective complaints must first consider whether the claimant demonstrated an underlying medical condition. *Holt v. Sullivan*, 921 F.2d 1221, 1223

(11th Cir. 1991); *see also Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002); 20 C.F.R. §

404.1529. If the claimant demonstrated an underlying medical condition, the ALJ must then

examine whether any objective medical evidence confirms the severity of the alleged pain, *or*

"that the objectively determined medical evidence is of such a severity that it can be reasonably

expected to give rise to the alleged pain." *Holt*, 921 F.2d at 1223.  Subjective testimony can

satisfy the pain standard if it is supported by medical evidence. *Foote v. Chater*, 67 F.3d 1553,

1561 (11th Cir. 1995).  In applying the pain standard, if the ALJ decides not to credit a

claimant's subjective testimony of pain, she must discredit it explicitly and articulate his reasons

for doing so. *Brown*, 921 F.2d at 1236.

In this case, the ALJ noted that the claimant "has severe impairments" but found that the

evidence, including statements by the claimant, did not show that she was unable to work

because of her impairments. The ALJ concluded that the claimant's records did not include

indications of severe, disabling pain or impairments that could likely cause that degree of pain.

(R. 20).

In discrediting the claimant's subjective complaints, the ALJ articulated specific grounds

for doing so. The ALJ noted that, at the medical disability determination examination with Dr.

Leigh, the claimant reported that her knee pain is normally a three out of ten and her neck pain is

normally a two out of ten. However, at the hearing, the claimant testified that her pain averages

seven out of ten. (R. 20, 34, 369-70).

The ALJ also noted several inconsistencies in the claimant's statements. First, she

claimed that she sought no medical treatment because of a lack of insurance, when she had

previously obtained treatment with no insurance. The ALJ also noted that, although the claimant

discussed the need to reduce her weight to relieve her back pain and indicated a willingness to do so after discussing plans with her doctor in November 2009, three months later the claimant had gained fifteen pounds. Finally, the ALJ noted that, while the claimant testified that she was only capable of lifting five pounds, she also reported that since her alleged onset date of disability, she was taking care of her grandson and wanted to return to work after January 2009. (R. 20, 38-39, 350, 316, 376, 395, 398).

Based on the explicit findings of the ALJ, this court concludes that she properly applied the Eleventh Circuit's pain standard and that substantial evidence supports her decision.

*Issue 2: The ALJ's Step Two Determination*

The claimant next argues that the ALJ erred in not finding her cervical degenerative disc disease to be a severe impairment at step two of the sequential evaluation. Specifically, the claimant argues that her cervical degenerative disc disease created more than a slight abnormality.

The Eleventh Circuit has stated that the ALJ could not have committed any error at step two if she found that the claimant had a severe impairment or combination of impairments and moved on to the next step in the evaluation, which is all that is required at step two. *Council v. Barnhart*, No.04-13128, at *4 (11th Cir. Dec. 28, 2004). In other words, the ALJ's failure to find a particular impairment severe is not a reversible error if the ALJ found other severe impairments. *See Maziarz. v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987).

In this case, the ALJ found that the claimant did not provide any medical evidence that demonstrates that the claimant had any abnormality as a result of her cervical degenerative disc

19

disease. Even though the claimant argues that she received treatment and had symptoms as a result of cervical degenerative disc disease, the ALJ found that the claimant failed to identify any medical source who reported a limitation in the claimant's functional ability as a result of her cervical degenerative disc disease.

The ALJ based her findings on the following evidence: in February 2008, the claimant reported to Dr. Leigh that her neck pain was at best one to two out of ten and reported no associated symptoms of her neck pain; Dr. Leigh noted that the claimant had only mildly decreased range of motion and was tender in her neck; in August 2008, the claimant complained of neck pain but had a good range of motion; and the January 2013 consultative examination by Dr. Romeo noted normal range of motion in all categories for the cervical spine. (R. 338, 370, 373, 434). Based on the above evidence, the ALJ found that the claimant did not identify any limitations supported by the record that indicated severe cervical degenerative disc disease. This court thus finds that the ALJ correctly concluded that the claimant's cervical degenerative disc disease was not severe.

Nonetheless, the ALJ found that the claimant had severe impairments of osteoarthritis, lumbar degenerative disc disease, morbid obesity, bilateral sensory neuropathy, major depression, and pain disorder at step two and proceeded with the sequential evaluation process. Despite the ALJ's finding that the claimant's cervical degenerative disc disease was non-severe, the ALJ considered that impairment during the RFC assessment. (R. 15).

Therefore, this court finds that the ALJ's step two determination was sufficient, even though the ALJ did not find the claimant's cervical degenerative disc disease to be severe impairment and that she considered it during the RFC assessment. *See Council v. Barnhart*,

20

No.04-13128, at *4.

*Issue 3: The ALJ's Assessment of the Claimant's RFC*

Lastly, the claimant argues that the ALJ's RFC determination is insufficient because it did not include an assessment of her ability to sit, walk, lift, carry, stoop, bend, squat, balance, or perform fine or gross manipulation on a regular and continuing basis. However, to the contrary, the ALJ did discuss the claimant's specific functional limitations prior to assessing her RFC in terms of exertional level.

According to Social Security Ruling 96-8p, the ALJ must first assess the claimant's functional limitations and restrictions and then express her functional limitations in terms of exertional levels. However, the ALJ's decision does not have to reference every specific piece of evidence that the ALJ evaluated, as long as the decision shows that she considered the claimant's medical condition as a whole. *Castel v. Comm'r of Soc. Sec.,* 355 F. App'x 260, 263 (11th Cir. 2009).

After thoroughly reviewing the relevant evidence in the record, as discussed above, the ALJ articulated that the claimant was capable of performing sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.927(a) in a temperature controlled environment without exposure to hazards. The ALJ specifically noted that she gave no weight to Dr. Romeo's finding that the claimant could perform medium-exertion sitting, standing, walking, and lifting, because Dr. Romeo failed to consider the claimant's subjective pain complaints or obesity. In addition, the ALJ restricted the claimant to a temperature controlled environment with no hazards because of cold exacerbating her pain and her use of narcotic pain medications. (R. 10-27). Therefore, the ALJ fulfilled the requirement because she assessed the claimant's functional ability and

21

incorporated the limitations that were supported by the medical evidence. The ALJ's RFC assessment reflects a thorough consideration of all relevant evidence in the record.

This court concludes that the ALJ properly performed a function-by-function assessment prior to expressing the claimant's RFC and that substantial evidence supports her decision. Therefore, combined with the other issues discussed above, this court affirms the decision of the Commissioner.

## VII. CONCLUSION

For the reasons stated above, this court concludes that the Commissioner applied the correct legal standards and that substantial evidence supports the Commissioner's decision. Accordingly, this court AFFIRMS the decision of the Commissioner. The court will enter a separate Order to that effect simultaneously.

DONE and ORDERED this 16th day of February, 2016.


KARON OWEN BOWDRE
CHIEF UNITED STATES DISTRICT JUDGE